**UNITED STATES**

v.

**Senior Airman Justin M. PIOLUNEK,
United States Air Force**

**ACM 38099**

U.S. Air Force Court of Criminal Appeals.

21 October 2013

Sentence adjudged 3 November 2011 by
GCM convened at Lajes Field,
Azores, Portugal.

Military Judge: Jefferson Brown.

Appellate Counsel for the Appellant: Captain Travis K. Ausland and Gregory M. Gagne (civilian counsel).

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Gerald R. Bruce, Esquire; and Major Tyson D. Kindness.

Before ROAN, MARKSTEINER, and WIEDIE, Appellate Military Judges

## OPINION OF THE COURT

WIEDIE, Judge:

The appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, the appellant was found guilty of knowing and wrongful possession of visual depictions of a minor engaged in sexually explicit conduct; knowing and wrongful receipt of visual depictions of a minor engaged in sexually explicit conduct; enticing a minor child to send sexually explicit images; and communicating indecent language to a minor, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The members sentenced the appellant to a dishonorable discharge, confinement for 1 year and 6 months, and reduction to E–1. The convening authority approved the sentence as adjudged.

The appellant raises six issues for our consideration: (1) Whether the appellant's convictions for possession and receipt of child pornography on divers occasions must be set aside because several images offered in support of the specifications are not child pornography, a general verdict was entered, and it is impossible to determine whether said images were included in the findings of guilt; (2) Whether the appellant's convictions for possession and receipt of child pornography on divers occasions must be set aside because Specifications 1 and 2 allege possession of "one or more" images on divers occasions, making it impossible to determine which images formed the basis for the members' finding of guilty; (3) Whether the military judge erred to the substantial prejudice of the ap-

pellant by denying two challenges for cause against panel members who had strong moral opposition to all forms of pornography in light of the nature of the evidence in the case, the liberal grant mandate, and the implied bias standard;[1] (4) Whether improper arguments by trial counsel during findings and assistant trial counsel during sentencing materially prejudiced the appellant's substantial rights; (5) Whether the military judge abused his discretion by refusing to give a tailored instruction requested by the trial defense counsel in light of the evidence in the case; and (6) Whether the military judge abused his discretion by denying the defense motion to compel a forensic psychologist to provide potentially favorable sentencing testimony.

Finding no error materially prejudicial to the substantial rights of the appellant, we affirm.

### Background

At the outset of the events giving rise to his court-martial, the appellant was a 28–year–old Senior Airman (SrA) stationed at Kunsan Air Base, Korea. The appellant became a Facebook "friend" with KR, who was the 13–year–old sister of a friend of the appellant's. According to the appellant, around July 2009, he noticed "dark" postings on KR's Facebook page and reached out to her because he was concerned she was suicidal. Between July 2009 and December 2009, the appellant and KR would communicate via Facebook or MySpace every week or two. Whatever the initial nature of the conversations, the content was clearly intimate by December 2009 when KR sent the appellant a topless picture of herself.

The appellant married his wife, SrA KP, in February 2010, and moved with her in accordance with military orders to Lajes Field, Azores, Portugal, in May 2010. He continued to communicate with KR, who had since turned 14 years old, via the internet and e-mail after he arrived at Lajes Field. From 18 May 2010 to 7 July 2010, KR sent the

appellant several naked pictures of herself. The appellant pressed KR numerous times between 7 July 2010 and 9 September 2010 for more photographs, as well as engaging KR in sexually explicit conversations that referenced her masturbating and his desire to have sexual relations with her. Even when KR attempted to steer the conversation away from sex, he would direct the conversations back to the topic of sex. When KR complained he would "much rather have dirty pictures" and that she thought they could never have a "normal, non-sex related conversation," he responded that "sex based is the best and easiest." KR replied there is "more to a relationship than sex," but the appellant chided her and dismissed her opinion by sarcastically pointing out her lack of a previous long-term relationship.

In October 2010, SrA KP started to become suspicious of the appellant based on communications she found he was having with other women through his Facebook page. SrA KP demanded his e-mail user name and password, which he provided. While accessing his e-mail account, SrA KP noticed the pictures KR had sent the appellant. She recognized KR as the sister of a friend and forwarded the pictures to her own e-mail account because she was concerned he might delete them. She confronted the appellant about the pictures and subsequently disclosed what she found to an agent from the Air Force Office of Special Investigations (AFOSI).

AFOSI eventually questioned the appellant. The appellant admitted to the online relationship with KR and that she had sent him multiple images of herself in a bikini, images of herself topless, images of herself fully naked, and a picture of herself with a hairbrush in her vagina.

### General Verdict of Guilt

The appellant contends that some of the images submitted to the members on the specifications for receipt and possession of visual depictions of a minor engaging in

---

1. Although the header for this issue in the appellant's Assignment of Errors mentions two challenges for cause against two separate panel members denied by the military judge, during trial, defense counsel used a peremptory challenge against one panel member, waiving review on that denial of the challenge for cause. Rule for Courts–Martial 912(f)(4). Therefore, we only address the denied challenge against Captain LD.

sexually explicit conduct were constitutionally protected and, therefore, the general verdict returned in his case must be set aside. There is a presumption in favor of general verdicts and they will not ordinarily be set aside even if there are alternate or multiple theories of guilt. *See United States v. Rodriguez*, 66 M.J. 201 (C.A.A.F.2008); *Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). However, "[w]here a general verdict of guilt is based in part on conduct that is constitutionally protected, the Due Process Clause requires that the conviction be set aside." *United States v. Barberi*, 71 M.J. 127, 128 (C.A.A.F.2012) (citing *Stromberg v. California*, 283 U.S. 359, 368–70, 51 S.Ct. 532, 75 L.Ed. 1117 (1931)).

The specifications in question alleged that the appellant received and possessed "visual depictions of a sexually explicit nature of [KR], a minor child." Although the military judge advised counsel for both sides that "care was taken ... to ensure that the elements were taken directly from the Specification as alleged, rather than some other source, be it, U.S. Code provision or otherwise," he stated to the members that the appellant was charged with the offenses of receipt and possession of "child pornography" and instructed them with definitions that were largely consistent with 18 U.S.C. § 2252A. Although the specifications referred to "visual depictions of a sexually explicit nature," the military judge instructed the members that the second element of both specifications required "visual depictions of minors engaging in sexually explicit conduct." The military judge further defined "sexually explicit conduct" as the "lascivious exhibition of the genitals or pubic area of any person." Thus, based on the instructions

given by the military judge, the appellant could not be convicted unless the images: (1) contained an exhibition of the genitals or pubic area; and (2) the exhibition was "lascivious." [2]

As a preliminary matter, we must first determine if any of the images offered in support of the receipt and possession specifications failed to satisfy the requirement that they be visual depictions of minors engaging in "sexually explicit conduct," and are, thus, constitutionally protected. If none of the images in question are entitled to constitutional protection, then the general verdict returned in this case is not in question. To determine whether the images were visual depictions of minors engaging in "sexually explicit conduct," we must conduct a review of the legal and factual sufficiency of the evidence.

 Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only those findings of guilty we determine to be correct in both law and fact. We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Moreover, "[i]n resolving legal-sufficiency questions, [we are] bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991). *See also United*

---

**2.** In *United States v. Barberi*, 71 M.J. 127, 131 (C.A.A.F.2012), the Court noted that "[c]harges for the possession of child pornography could be brought pursuant to clauses (1) or (2) of Article 134[, UCMJ, 10 U.S.C. § 934] without reference to the definitions laid out in the [Child Pornography Prevention Act], thereby creating a completely different set of elements required for conviction." In the present case, the language of the specifications was such that they could have created a completely different set of elements required for a conviction. Although, as noted above, the military judge indicated that care was taken to ensure that the elements were taken

from the specifications rather than the U.S. Code, the terms and definitions he used mirrored much of the language in the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. §§ 2252A–2260 (2006). He stated that the appellant was charged with the offense of receipt/possession of "child pornography," he used the term "sexually explicit conduct" from the CPPA (rather than the "sexually explicit nature" language from the specifications) and defined "sexually explicit conduct" consistent with the definition of that phrase in the CPPA. As such, consistent with our superior court's approach in *Barberi*, we will analyze this case in the context of the CPPA.

States v. Young, 64 M.J. 404, 407 (C.A.A.F. 2007). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." Turner, 25 M.J. at 325. Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; United States v. Bethea, 46 C.M.R. 223, 224–25 (C.M.A.1973).

▪ Thus, based on the military judge's instruction to the members, the question we must address is whether, as a matter of law, the images in this case contained a "lascivious exhibition of the genitals or pubic area." If the images do not depict the genital or pubic area, we stop our analysis. If those specific areas are depicted, we apply the test set out in United States v. Dost, 636 F.Supp. 828 (S.D.Cal.1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987). This Court adopted the widely accepted Dost factors in United States v. Pullen, 41 M.J. 886 (A.F.Ct.Crim.App.1995). The Dost factors are as follows:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Dost, 636 F.Supp. at 832. The court in United States v. Horn, 187 F.3d 781, 789 (8th Cir.1999), observed that "[n]udity alone does not fit [the definition of "lascivious exhibition of the genitals or pubic area"]; there must be an exhibition of the genital area and this exhibition must be lascivious." (internal quotation marks omitted).

The military judge instructed the members with respect to "sexually explicit conduct" and its associated definitions. The military judge further instructed the members that there were 22 images introduced with respect to the specifications alleging receipt and possession of visual depictions of a minor engaged in sexually explicit conduct. These images were identified to the members as: Prosecution Exhibit 1, page 4, images 8111, 8113, and 8115; page 5, image 8116; page 6, images 8308, 8313, and 8314; page 7, images 8317, 8329 [3], 8334, and 8337; page 8, images 8382 and 8386; page 10, images 8700 and 8702; page 11, image 8727; page 12, image 9414; page 15, image 0862; page 16, images 0870 and 0875; and page 17, images 1025 and 1036.

▪ We find 19 of the 22 images in question constitute visual depictions of a minor engaging in sexually explicit conduct, specifically: 8111, 8113, 8115, 8116, 8314, 8317, 8329, 8334, 8337, 8382, 8386, 8700, 8702, 8727, 9414, 0862, 0875, 1025, and 1036. We find the evidence establishes KR was 14 or 15 years old when the images were created. We further find each of these 19 images depict KR's genitalia or pubic area. Additionally, applying the Dost factors, we find each of these 19 images depicts an exhibition of KR's genitalia or pubic area that was "lascivious" based on a totality of the circumstances. United States v. Roderick, 62 M.J. 425, 429–30 (C.A.A.F.2006) (citations omitted). The lasciviousness of the images is further supported by the communications that took place between the appellant and KR before the images were sent, contemporaneous to when they were sent, and after

---

3. The military judge mistakenly referred to image 8329 as image "3329." In reviewing the record of trial, we are convinced beyond a reasonable doubt there was no confusion on the part of the members concerning the image to which the military judge was referring and there was no prejudice to the appellant. In so instructing the members, the military judge referred to Prosecution Exhibit 1, page 7. There were only four images on page 7 and all three of the other images in question were correctly identified. Furthermore, there was no other image introduced at trial which contained an image number that reasonably could have been mistaken for the one to which the military judge was referring.

they were sent. The appellant repeatedly asked KR to send him more pictures and whether she was masturbating. On multiple occasions, he described in explicit language what he wanted to do sexually with KR. When KR wrote that she would show him her scars from a recent surgery, he responded he wanted to see her "nipples, clit, pussy lips and asshole." In the same e-mail chain, he wrote he needed a close-up of KR's "clit" and asked why he has not received more pictures. Based on the totality of the circumstances, we find the 19 images constitute visual depictions of a minor engaging in sexually explicit conduct. We further find the evidence factually and legally sufficient to support the finding that appellant received and possessed visual depictions of a minor engaging in sexually explicit conduct.

Although the evidence is legally and factually sufficient to support a conviction for receipt and possession of visual depictions of a minor engaging in sexually explicit conduct, we find 3 images that served as part of the basis for the appellant's convictions do not meet the legal definition of sexually explicit conduct: 8308, 8313, and 0870.

■ With respect to the 3 images in question, we do not even need to reach a decision concerning whether they are lascivious in accordance with the *Dost* factors. While KR is naked in each of the images, none of these three images contain an exhibition of her genitals or pubic area. Therefore, based on the definition of sexually explicit conduct provided by the military judge, these 3 images do not constitute visual depictions of a minor engaging in sexually explicit conduct.

*Barberi and Harmlessness*

■ Because we have found 3 of the 22 images that served as the basis for the appellant's convictions do not meet the legal requirements to be visual depictions of a minor engaging in sexually explicit conduct and are, therefore, constitutionally protected, we must now determine whether our superior court's decision in *Barberi* requires that we set aside the findings of guilt to Specifications 1 and 2 of the Charge.

In the Army Court of Criminal Appeals' review of *Barberi*, that court found that four of six images supporting a charge for possession of child pornography did not meet the legal definition of child pornography and were, therefore, constitutionally protected. Nonetheless, based on the two images that met the definition of child pornography, it upheld the conviction. *United States v. Barberi*, Army 20080636, 2011 WL 748378 (Army Ct.Crim.App. 22 February 2011) (unpub. op.). On further appeal, the Court of Appeals for the Armed Forces held that " '[i]f a factfinder is presented with alternative theories of guilt and one or more of those theories is later found to be unconstitutional, any resulting conviction must be set aside when it is unclear which theory the factfinder relied on in reaching a decision.' " *Barberi*, 71 M.J. at 131 (quoting *United States v. Cendejas*, 62 M.J. 334, 339 (C.A.A.F.2006)) (citing *Stromberg*, 283 U.S. at 368, 51 S.Ct. 532). The Court further noted that "[t]he theory enunciated by the Supreme Court in *Stromberg*, 'encompasses a situation in which the general verdict on a single-count indictment or information rested on *both* a constitutional and an unconstitutional ground.' " *Barberi*, 71 M.J. at 131 (quoting *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)) (emphasis in original). The Court therefore set aside the conviction despite the fact that "two of the images submitted by the prosecution in support of [the charge] were legally and factually sufficient to support a finding of guilty." *Barberi*, 71 M.J. at 131.

■ Having determined 3 of the 22 images offered in support of the convictions in this case did not constitute visual depictions of a minor engaging in sexually explicit conduct, we must determine whether the error was harmless by applying the test established by the Supreme Court in *Chapman v. California*, 386 U.S. 18, 21–22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Barberi*, 71 M.J. at 127. We must determine " 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman*, 386 U.S. at 23, 87 S.Ct. 824 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)). When constitutional error is at issue, the Government must establish beyond a

reasonable doubt that any error did not contribute to the verdict. *Neder v. United States,* 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *United States v. McDonald,* 57 M.J. 18, 20 (C.A.A.F.2002). "To say that an error did not contribute to the verdict is ... to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991). In *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the Supreme Court stated the Chapman test for harmless error could be satisfied where there is overwhelming evidence of guilt. However, "[i]f, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error ... it should not find the error harmless." *Neder,* 527 U.S. at 19, 119 S.Ct. 1827.

In *Barberi,* our superior court applied the *Chapman* test, stating "we cannot know which images formed the basis for the finding of guilt to the possession of child pornography charge" and, therefore, "the constitutionally protected images reasonably may have contributed to the conviction and cannot be deemed unimportant in relation to everything else the members considered." 71 M.J. at 132–33. The conclusion in *Barberi* is, however, distinguishable from the facts in the present case.

■■■ In applying the *Chapman* test to the facts of this case, we find three considerations to be paramount: (1) The quantitative strength of the evidence; (2) The qualitative nature of the evidence; and (3) The circumstances surrounding the offense as they relate to the elements of the offense charged. Based upon an examination of these factors, we can conclude beyond a reasonable doubt that the 3 images were unimportant in relation to everything else the members considered, and thus the error of admitting these images was harmless.

### 1. Quantitative Strength

In considering the quantitative strength of the evidence, we conclude that the number of images introduced at trial that are not af-

forded constitutional protection, versus the number that are protected and therefore excluded, strongly supports a finding of harmlessness under *Chapman.* In *Barberi,* four out of six, or 67%, of the images introduced by the Government in support of the charge were found to be legally and factually insufficient to support the charge based on constitutional grounds. In this case, only 3 out of 22, or 14%, of the images were legally and factually insufficient to support the charges. In deciding *Barberi,* we do not believe that our superior court intended to suggest that a conviction must be set aside in every case where even one image offered into evidence as a visual depiction of a minor engaging in sexually explicit conduct was later determined to be constitutionally protected. Such a reading would result in the absurd outcome of vacating a conviction for possessing 10,000 images of minors engaging in sexually explicit conduct because one image did not include a lascivious display of the genital or pubic area.

We do not suggest that the test for harmlessness can be reduced to a simple mathematical equation. However, the stark contrast in the number of images in this case that were not constitutionally protected, as compared to those in *Barberi,* is relevant to the question of harmlessness and to our conclusion that the excluded images did not materially contribute to the finding of guilt.

### 2. Qualitative Nature

We turn next to an analysis of the qualitative strength of the evidence. We find, as noted above, the images that were not entitled to constitutional protection provide very strong evidence that the introduction of the constitutionally protected images was harmless beyond a reasonable doubt. Applying the *Dost* factors, the 19 images in question clearly constitute a lascivious exhibition of the genitals or pubic area. In each of the 19 images, KR is fully nude. Each image was created, in response to the appellant's requests, with the intent to elicit a sexual response in the viewer. The genital or pubic area is prominent in each of the photos. Given the context in which the images were requested and provided, each image suggests a willingness to engage in sexual behavior.

In contrast to images the appellant would term "child erotica," the 19 images constitute a lascivious display of the genitals or pubic area, to include depictions of KR with a hair brush in her vagina, sitting naked on a bathroom sink with her legs wide open, and touching her vaginal area.

Furthermore, the 3 excluded images are pictures of KR's naked breasts. Given the majority of the properly admitted 19 images were full frontal naked shots of KR, to include exposure of her breasts, we have no doubt the members would have found beyond a reasonable doubt that the appellant was guilty even if only presented with the 19 images. This factor further supports our finding that the error was harmless.

### 3. Surrounding Circumstances

Lastly, the circumstances surrounding the creation, receipt, and possession of the images strongly support a conclusion that the admission of the 3 constitutionally protected images was harmless beyond a reasonable doubt. The appellant did not accidently stumble upon the images in this case or actively seek out existing images on the internet. To the contrary, he actively formed a relationship and sought pictures from KR, who was the 13–year–old sister of a friend of the appellant's. Furthermore, the nature of the images could not have been any surprise to the appellant given he specifically advised KR that he wanted to see pictures of her "clit [and] pussy lips." The appellant actively invited images depicting a lascivious display of KR's genitals and pubic area with full knowledge of her age.

The appellant's behavior in actively seeking out and having KR send him the images was properly before the members, and further supports our finding that the error was harmless.

In the present case, even when one disregards the 3 images in question, the evidence of the appellant's guilt is overwhelming. We find no material prejudice because 19 images were clearly visual depictions of a minor engaging in sexually explicit conduct and, based on the record as a whole, made the consideration of the 3 images "unimportant" in relation to everything else the members considered on the question of guilt. *See*

*Yates*, 500 U.S. at 403, 111 S.Ct. 1884. The quantitative strength, qualitative nature of the images, and the circumstances surrounding the creation, receipt, and possession of images all support a finding that the error was harmless. In other words, we have no doubt the 3 images in question did not materially contribute to the finding of guilt because of the evidence relating to the other 19 images. We are convinced " 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *McDonald*, 57 M.J. at 20 (quoting *Neder*, 527 U.S. at 18, 119 S.Ct. 1827).

### Walters Issue

The appellant relies on *United States v. Walters*, 58 M.J. 391 (C.A.A.F.2003), for the proposition that the findings of guilty in his case are so ambiguous that this court cannot properly conduct an Article 66(c), UCMJ, review. His reliance is misplaced, as the specificity required by *Walters* applies only in those "narrow circumstance[s] involving the conversion of a 'divers occasions' specification to a 'one occasion' specification through exceptions and substitutions." *Id.* at 396 (quoting Rule for Courts–Martial (R.C.M.) 921(d)); *see also Rodriguez*, 66 M.J. at 205; *Brown*, 65 M.J. at 358.

The military judge properly instructed the members on the procedures for finding the appellant guilty by exceptions and substitutions. The findings worksheet specifically provided the members with the option to strike the "divers" language in reaching a finding of guilty as to the receipt and possession of child pornography specifications. The members did not convert a divers occasions specification to a one occasion specification through exceptions and substitutions and, therefore, *Walters* is not applicable.

### Denial of Defense Challenge for Cause

The appellant next argues that the military judge abused his discretion by denying his challenge for cause against Captain (Capt) LD. R.C.M. 912 addresses challenges for both actual and implied bias. The issue in this case deals with implied bias. R.C.M. 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member "[s]hould not sit as a member in

the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."

The test for implied bias is objective, viewed through the eyes of the public, and focuses on the appearance of fairness in the military justice system. *United States v. Leonard*, 63 M.J. 398, 402 (C.A.A.F.2006); *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F.2006). If the public perceives that an accused received less than a court composed of fair, impartial, and equal members, our superior court has not hesitated to set aside the affected findings and/or sentence. *See Leonard*, 63 M.J. at 403; *Moreno*, 63 M.J. at 135; *United States v. Wiesen*, 56 M.J. 172, 176–77 (C.A.A.F.2001). However, implied bias should be relied upon rarely when there is no actual bias. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F.2004) (citations omitted).

"We review rulings on challenges for implied bias under a standard that is less deferential than abuse of discretion, but more deferential than de novo review." *Moreno*, 63 M.J. at 134 (citations omitted). Military judges are required to follow the liberal grant mandate in ruling on challenges for cause made by an accused. *Moreno*, 63 M.J. at 134 (citing *United States v. White*, 36 M.J. 284, 287 (C.M.A.1993)). *See also United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005); *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F.2002). "[I]n the absence of actual bias, where a military judge considers a challenge based upon implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare." *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F.2007).

Upon questioning by defense counsel in general voir dire, Capt LD said he had a moral opposition to pornography. During individual voir dire, Capt LD elaborated that his views were based on "religious reasons" and that he personally felt he should avoid pornography, but that he did not think it should be illegal. Upon additional questioning, Capt LD further clarified that his per-

sonal standard was to avoid pornography, but it was not his place to judge others for not avoiding it.

The defense challenged Capt LD for implied bias. The military judge acknowledged the liberal grant mandate in considering the challenge. The military judge denied the challenge because he found Capt LD to be "thoughtful" as well as "straightforward and honest." The military judge pointed out that Capt LD was able to separate his own high personal standard from that to be applied to others and that he would not use his own personal standard to judge others.

The military judge did not expressly state that his observations concerning Capt LD were "viewed through the eyes of the public" as to whether his presence as a member would cause substantial doubt as to fairness or impartiality of the court-martial. However, in viewing the observations of the military judge with respect to Capt LD in the context of the entire discussion concerning the challenge for cause, it is clear to this Court the military judge's comments were implicitly based, in large part, on how Capt LD's responses would be viewed by an outside observer.

Considering Capt LD's responses through the eyes of the public and focusing on the appearance of fairness in the military justice system, we find that the military judge did not err. He considered the challenge based upon implied bias, recognized his duty to liberally grant defense challenges, and placed his rationale on the record. Under the " 'totality of the circumstances particular to [this] case,' " we find no reason to disturb his ruling. *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F.2007) (quoting *Strand*, 59 M.J. at 456).

*Improper Arguments*

The appellant asserts that trial counsel's statements during findings argument and assistant trial counsel's statements during sentencing argument were improper and materially prejudiced his substantial rights. The appellant contends that trial counsel and assistant trial counsel made a litany of improper arguments, to include:

(1) misstating the law by stating "Bottom-line up front, it is illegal to possess or receive images of a child who's under the age of 18";

(2) personalizing argument by declaring "[w]hat are our core values? . . . [i]f it is our values that say it's okay . . . then I will quit, because I don't want to be around people who do this. This is killing me."; [4]

(3) attempting to chill the deliberative process by arguing that any member who thinks the pictures were not child pornography would require that member and trial counsel to "talk a little bit more";

(4) attempting to have the members put themselves in the place the victim's parents by referring to the appellant as "every parent's nightmare";

(5) mischaracterizing the evidence by referring to the appellant as a "manufacturer" of child pornography and "a child pornographer";

(6) mischaracterizing the evidence by arguing the appellant was a 31–year–old who "exploits girls, young girls, children";

(7) arguing facts not in evidence by stating that the appellant "groomed" KR when grooming is a term with specialized meaning in the context of child sex offenses, not one commonly known by the general public without specialized training and knowledge, and no expert testified to describe what grooming was;

(8) inflaming the passions of the members by referring to the appellant as a "sex troll" on four occasions and calling him a "perverted Peter Pan"; and

(9) disparaging opposing counsel by stating that the appellant's defense was "nonsense."

■■■■ During argument, "the trial counsel is at liberty to strike hard, but not foul, blows." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F.2000) (citations omitted).

Trial counsel is entitled to "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Id.* (citing *United States v. Nelson*, 1 M.J. 235, 239 (C.M.A.1975)).

The appellant did not object to trial counsel's arguments at trial so we review the propriety of the arguments for plain error. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F.2011) (citing *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F.2007)). To prevail under a plain error analysis, the appellant has the burden of showing, inter alia, that the alleged errors materially prejudiced a substantial right. *See id.*

■■■■ In this case, even if we were to assume trial counsel's and assistant trial counsel's arguments were improper, we conclude the appellant has not met his burden of establishing the prejudice prong of plain error analysis. "In assessing prejudice under the plain error test where prosecutorial misconduct has been alleged: '[W]e look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial.'" *Erickson*, 65 M.J. at 224 (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005)) (alteration in original). In *Fletcher*, where the issue was the Government's findings argument, our superior court explained that the "best approach" to the prejudice determination involves balancing three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." 62 M.J. at 184. Applying the *Fletcher* factors in the context of an allegedly improper findings argument, we consider whether, taken as whole, trial counsel's comments were such that we cannot be confident the appellant was convicted on the basis of the evidence alone. *See id.* In applying the same *Fletcher* factors to allegedly improper sentencing argument, we perform the same analysis to determine whether the argument of counsel undermines our confidence that the appellant was sentenced on the basis of the evidence alone.

---

4. When the military judge sustained a defense counsel objection, trial counsel continued "[w]e should not want to live in a world like that."

*See Erickson,* 65 M.J. at 224 (citing *Fletcher,* 62 M.J. at 184). In this case, considering the cumulative impact of any allegedly improper arguments in the context of the trial as a whole, we find that the third *Fletcher* factor weighs so heavily in favor of the Government that we are confident that the appellant was convicted and sentenced on the basis of the evidence alone and not the statements of trial counsel.

With respect to findings, the appellant has not established the Government's findings argument materially prejudiced his substantial rights that he was not convicted based on the evidence alone. The appellant's then-wife found the pictures and provided them to law enforcement. The appellant confessed to AFOSI that he had received naked pictures of KR. E-mail communications between the appellant and KR evidencing the nature of their relationship and his numerous requests for pictures of KR were introduced at trial. The members were presented with the images in question and were able to determine for themselves whether they met the elements and definitions as provided by the military judge. Even if each statement made during the findings argument that the appellant now complains of was obvious error, he has failed to establish that the weight of the evidence did not clearly support the findings of the members. Likewise, he has failed to establish that the alleged improper sentencing argument statements resulted in a sentence that was not supported by the evidence. He was a married, 28–year–old Airman who developed a sexually charged relationship with a troubled 13–year–old girl. He encouraged her to send him sexually explicit pictures of herself. He kept the pictures she sent to him and described in graphic detail what he wanted to do with her sexually. Based upon the overwhelming weight of the evidence, we find the appellant has failed to meet his burden of establishing plain error.

### Tailored Instruction

Next, the appellant argues the military judge erred in not providing a tailored instruction requested by the defense. Counsel is entitled to request specific instructions, but the military judge has sub-

stantial discretionary power in deciding on the instructions ultimately provided to the members. *United States v. Damatta–Olivera,* 37 M.J. 474, 478 (C.M.A.1993) (citing *United States v. Smith,* 34 M.J. 200 (C.M.A. 1992)); R.C.M. 920(c), Discussion. Thus the denial of a requested instruction is reviewed for abuse of discretion. *Damatta–Olivera,* 37 M.J. at 478; *United States v. Rasnick,* 58 M.J. 9, 10 (C.A.A.F.2003). To determine whether error exists when a military judge fails to give a requested instruction, we apply a three-pronged test: "(1) the [instruction requested by counsel] is correct; (2) 'it is not substantially covered in the main [instruction]'; and (3) 'it is on such a vital point in the case that the failure to give it deprived [the accused] of a defense or seriously impaired its effective presentation.'" *Damatta–Olivera,* 37 M.J. at 478 (quoting *United States v. Winborn* 34 C.M.R. 57, 62 (C.M.A. 1963)); *United States v. Gibson,* 58 M.J. 1, 7 (C.A.A.F.2003).

At trial, defense counsel submitted a tailored instruction to define "child erotica." The requested instruction provided:

Child erotica is defined as mere nudity, breasts or sexually suggestive poses; a category of images that do not include exhibition of the genitals or pubic area or which do not exhibit lasciviousness, as I've defined it previously. Receipt, possession or solicitation of child erotica is not unlawful.

The military judge denied the request for the tailored instruction, stating defense counsel could argue the images did not meet the *Dost* factors, but that he believed the instructions he intended to give the members were "appropriate and adequately comport with the law." In addressing what could be deemed "child erotica," the military judge instructed the members:

Not every exposure of genitals or pubic area constitutes a lascivious exhibition .... consider this: Nudity alone, nor "sexually provocative poses" alone, that do not include lascivious exhibitions of the genitals or pubic area of any person, is not sexually explicit conduct as I have defined.

Applying the three *Damatta–Olivera* requirements to this case, we find the instruction requested by the defense was "substantially covered" in the military judge's instruction on lascivious exhibition of the genitals or pubic area. The military judge chose not to use the words "child erotica," but the legal notions conveyed by the proposed defense instruction were covered in the instructions given by the military judge. The gist of the defense instruction was that not all nude pictures of children constituted child pornography, that it must include a lascivious exhibition of the genitals or pubic area. That legal principle was more than adequately covered by the given instructions. Therefore we find no abuse of discretion.

### Denial of Defense Motion to Compel a Forensic Psychologist

Prior to trial, the appellant's trial defense counsel filed a motion to compel the appointment of an expert in the field of forensic psychology. The military judge denied the motion stating the appellant failed to show that the requested expert assistance was "necessary as set forth in case law and the RCMs."

Much of the justification advanced in the pretrial motion involved issues surrounding the possible testimony of KR. At trial, KR did not testify, rendering many of the justifications moot. On appeal, however, the appellant maintains the appointment of a forensic psychologist was necessary "to provide potentially favorable expert testimony during sentencing in the area of recidivism." The appellant asserts that the military judge abused his discretion in denying the motion to compel. We disagree.

■■■■ We review a military judge's ruling on a request for expert assistance for an abuse of discretion. *United States v. Bresnahan*, 62 M.J. 137, 143 (C.A.A.F.2005). Abuse of discretion is a strict standard that requires more than a difference of opinion but a finding that the ruling was "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95,

99 (C.A.A.F.2010) (citations omitted) (internal quotation marks omitted).

■■■ R.C.M. 703(d) permits employment of experts at Government expense when their testimony would be relevant and necessary. *United States v. Ford*, 51 M.J. 445, 455 (C.A.A.F.1999). The defense bears the burden to show (1) why the expert is necessary, (2) what the expert will do, and (3) why counsel cannot accomplish the same tasks. *United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F.2008); *Bresnahan*, 62 M.J. at 143. To meet this burden, the accused must show more than a "mere possibility of assistance" from the expert, and show that a "reasonable probability" exists that the expert will assist the defense and that denial of the request would result in an unfair trial. *Bresnahan*, 62 M.J. at 143 (citations omitted) (internal quotation marks omitted).

■■■ We find the military judge did not abuse his discretion when he denied the defense motion to compel. The defense couched their request as necessary because it was "imperative that the defense be afforded the opportunity to put forward evidence of [the appellant's] risk of recidivism." The defense further stated that the evidence was "highly technical" and could only be elicited if an expert were given the opportunity to psychologically evaluate the appellant. The military judge denied the motion stating that the defense failed to establish that such expert assistance was necessary. In our opinion, the reasons the appellant cites show no more than the mere possibility of assistance in this case. After examining the record, we find no abuse of discretion in the military judge's determination that the appellant failed to show the required necessity.

### Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37, 41

(C.A.A.F.2000).[5] Accordingly, the findings and the sentence are

AFFIRMED.

**5.** Though not raised as an issue on appeal, we note that the overall delay of more than 540 days between the time of docketing and review by this Court is facially unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F.2006). Having considered the totality of the circumstances and the entire record, we find that the appellate delay in this case was harmless beyond a reasonable doubt. *Id.* at 135–36 (reviewing claims of post-trial and appellate delay using the four-factor analysis found in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). *See also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F.2006); *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F.2002).