ERDMANN, Judge
(dissenting in part and concurring in the result):
As I cannot agree with the majority’s interpretation of Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), and the impact of that decision on United States v. Barberi, 71 M.J. 127 (C.A.A.F.2012), I respectfully dissent from that portion of the majority opinion. However, as I agree that the decision of the United States Air Force Court of Criminal Appeals should be affirmed, I concur in the result.

Background

Among other specifications, Piolunek was charged with receipt and possession of visual depictions of a sexually explicit nature of a minor under Article 134(2), UCMJ, 10 U.S.C. § 934(2). Although not charged with violation of the Child Pornography Prevention Act (CPPA) under Article 134(3) (crimes and offenses not capital), the military judge provided the members with definitions which were largely consistent .with those found in that act. The government introduced twenty-two images of alleged child pornography to prove the receipt and possession specifications. The military judge instructed the members that the specifications required “visual depictions of minors engaging in sexually explicit.conduct” and then defined “sexually explicit conduct” as the “lascivious exhibition of the genitals or pubic area of any person.” The members subsequently found Piolunek guilty of those specifications in a general verdict.
The CCA affirmed the conviction, but upon reviewing the images, held that three of the images did not meet the definition that the military judge had provided for “sexually explicit conduct.” United States v. Piolunek, 72 M.J. 830, 837 (A.F.Ct.Crim.App.2013). Specifically, the CCA found that the three images did not contain an exhibition of the genitals or pubic area and therefore did not constitute visual depictions of a minor engaging in sexually explicit conduct. Id. As a result, those images did not constitute child pornography as defined by the military judge. Id. The CCA, however, went on to hold that the error was harmless, reasoning that there was no possibility that the three images might have contributed to the conviction. Id. at 837-39.
We initially granted an issue brought by Piolunek, which asked this court to set aside his convictions of possession and receipt of child pornography because three of the images considered by the members did not constitute child pornography and were therefore constitutionally protected, citing Bar-beri. The government then certified an issue which asked whether the CCA erred when it found that the three images in question did not constitute child pornography.

Granted Issue

We were faced with a strikingly similar factual situation in Barberi. The appellant in *113 that ease had been convicted of possession of child pornography on the basis of six images introduced by the government. 71 M.J. at 129. The military judge had, similar to this case, provided the members with the relevant definitions from the CPPA. Id. at 130. The Army Court of Criminal Appeals (CCA) found that four of the six images were legally .and factually insufficient “to support Bar-beri’s conviction for knowing possession of child pornography because none of the four images depicted any portion of SD’s genitalia or pubic area.” Id. at 130 (citation omitted).
Before this court, Barberi argued that since four of the six images were constitutionally protected, the entire conviction must be set aside as this court could not determine whether the conviction rested upon constitutional or unconstitutional grounds, relying on Stromberg. Id. at 129.
In Barberi, we initially cited the common law rule that when a factfinder returns a general verdict on an indictment charging several acts, the verdict will stand if the evidence is sufficient to any one of the acts. Id. at 131. However, we went on to note that an exception to the general verdict rule exists when one of the grounds of the conviction is found to be unconstitutional. Id. That rule originated in Stromberg, where the Supreme Court held that when there was a general verdict on a single-count indictment which rested on both constitutional and unconstitutional grounds, the guilty verdict must be set aside. Id. Accordingly, in Bar-beri we reversed the CCA, holding:
Because we cannot know which prosecution exhibits formed the basis for the member’s decision, and their findings may have been based on constitutionally protected images, the general verdict to the possession of child pornography charge must be set aside.
Id. at 132.
Today the majority reverses our opinion in Barberi, holding that Stromberg “applies only where members may have convicted on the basis of an unconstitutional statute or legal theory.” United States v. Piolunek, 74 M.J. 107, 110 (C.A.A.F.2015). In affirming the CCA, the majority also holds:
Absent an unconstitutional definition of criminal conduct, flawed instructions, or evidence that members did not follow those instructions, none of which are present here, and none of which were present in Barberi, there is simply no basis in law to upset the ordinary assumption that members are well suited to assess the evidence in light of the military judge’s instructions.
Id. at 109.
I respectfully disagree with the majority’s holding that Stromberg is limited to only those situations where the government relies on an unconstitutional statute or legal theory. My reading' of Stromberg, and its progeny, indicates that the rule should apply to all situations where the conviction rests on both constitutionally protected conduct and unprotected conduct, regardless of the litigation process which revealed the constitutional infirmity.
In Barberi, we looked to Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), to inform our interpretation of Stromberg. 71 M.J. at 131. In Zant, the Supreme Court discussed the Stromberg line of cases in which the conviction rested upon both protected and unprotected conduct:
The seeond rule derived from the Strom-berg case is illustrated by Thomas v. Collins, 323 U.S. 516, 528-529 [65 S.Ct. 315, 89 L.Ed. 430] (1945), and Street v. New York, 394 U.S. 576, 586-590 [89 S.Ct. 1354, 22 L.Ed.2d 572] (1969). In those cases we made clear that the reasoning of Strom-berg encompasses a situation in which the general verdict on a single-count indictment or information rested on both a constitutional and an unconstitutional ground. In Thomas v. Collins, a labor organizer’s contempt citation was predicated both upon a speech expressing a general invitation to a group of nonunion workers, which the Court held to be constitutionally protected speech, and upon solicitation of a single individual. The Court declined to consider the State’s contention that the judgment could be sustained on the basis of the individual solicitation alone, for the record showed that the penalty had been *114 imposed on account of both solicitations. “The judgment therefore must be affirmed as to both or as to neither.” 323 U.S. at 529 [65 S.Ct. 315]. Similarly, in Street, the record indicated that petitioner’s conviction on a single-count indictment could have been based on his protected words as well as on his arguably unprotected conduct, flag burning. We stated that, “unless the record negates the possibility that the conviction was based on both alleged violations,” the judgment could not be affirmed unless both were valid. 394 U.S. at 588 [89 S.Ct. 1354].
The .Court’s opinion in Street explained:
“We take the rationale of Thomas to be that when a single-count indictment or information charges the ■ commission of a crime by virtue of the defendant’s having done both a .constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as ‘intertwined’ and have rested the conviction on both together. See 323 U.S. at 528-529, 540-541 [65 S.Ct. 315]. There is no comparable hazard when the indictment or information is in several counts and the conviction is explicitly declared to rest on findings of guilt on certain of these counts, for in such instances there is positive evidence that the trier of fact considered each count on its own merits and separately from the others.” Ibid, (footnote omitted).
The rationale of Thomas and Street applies to cases in which there is no uncertainty about the multiple grounds on which a general verdict rests. If, under the instructions to the jury, one way of committing the offense charged is to perform an act protected by the Constitution, the rule of these cases requires that a general verdict of guilt be set aside even if the defendant’s unprotected conduct, considered separately, would support the verdict.
462 U.S. at 882-83, 103 S.Ct. 2733 (footnote and citations omitted).
I see no constitutionally significant distinction between the situations presented in this case and Barberi, and the situations presented in Thomas and Street. Here, the constitutionality of a particular criminal statute is not at issue, but rather a situation where the proof relied on by the government in two single count charges contained both constitutionally protected and unprotected images. In my view, the Stromberg rule should be read to include a general verdict conviction based on both constitutionally protected conduct and unprotected conduct regardless of the litigation process that revealed the constitutionality infirmity.[1] I would therefore reaffirm our rationale in Barberi.
However, even if I were to assume the majority’s position to be correct, under its analytical framework the result would appear to be the same. The majority holds that Stromberg applies only to those “convicted on the basis of an unconstitutional statute or legal theory.” Piolunek, 74 M.J. at 110. Certainly the constitutionally protected images were part and parcel of the government’s legal theory of the ease.
The majority also holds:
Absent an unconstitutional definition of criminal conduct, flawed instructions, or evidence that members did not follow those instructions, none of which are present here, and none of which were present in Barberi, there is simply no basis in law to upset the ordinary assumption that members are well suited to assess the evidence in light of the military judge’s instructions.
Id. at 109.
In both this case and Barberi, the military judge provided the members with instructions which contained constitutional defini *115 tions of the criminal conduct. However, in both cases the CCA found that some of the images reviewed by the members did not meet the statutory definitions and were therefore constitutionally protected, indicating that the members had not followed the military judge’s instructions.[2]
As for the assertion that members are well suited to make constitutional determinations, the Supreme Court in Griffin v. United States, 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), noted:
Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to the law — whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually' inadequate theory, since jurors are well equipped to analyze the evidence.

Prejudice

The CCA held that although the error was of constitutional dimension, it could be reviewed for prejudice. Piolunek, 72 M.J. at 837. The CCA then distinguished this case from Barberi and was “convinced beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.” Id. at 839 (citation and internal quotation marks omitted).
. In Barberi we recognized that this type of constitutional error is reviewable for harmlessness and applied the Chapman test as to “‘whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.’ ” Barberi, 71 M.J. at 132 (quoting Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). In performing its harmlessness analysis, the CCA reviewed the quantitative strength of the admissible evidence, the qualitative nature of that evidence'and the circumstances surrounding the offense as they related to .the elements of the offense. Piolunek, 72 M.J. at 837-39. While I view the CCA’s analysis appropriate in this case, I would stress that the three-part test relied upon by the CCA is not an exhaustive list of considerations that courts should consider, as the harmlessness analysis will necessarily differ in each ease.
I would hold that Barberi correctly interprets Stromberg and that the CCA correctly applied both the Stromberg. analysis and the harmless test as set forth in Barberi. I would therefore affirm the decision of the CCA, although on the grounds set forth in this separate opinion.

. I agree that there are no Supreme Court or circuit court cases which address the situation presented in this case. That lack of precedent from the Article III system may be explained by the different roles of the intermediate courts in the military justice system and the Article III system. Unlike the Courts of Criminal Appeals in the military system, federal circuit courts lack the ability to make a factual finding that one or more of the images submitted to a jury, which resulted in a general verdict conviction, contained constitutionally protected conduct. As a result, this factual circumstance will not present itself in the Article III system.

. Contrary to the government’s concerns that this application of Stromberg and Barberi will make the prosecution of child pornography offenses difficult if not impossible, the proper procedure is for the United States to review all of the images prior to their introduction at trial to assure that the images fall within the definition of child pornography in the CPPA and are therefore not constitutionally protected.