UNITED STATES, Appellee

v.

Cyrus YOUNG, Sergeant First Class
U.S. Army, Appellant

No. 06-0505

Crim. App. No. 20010820

United States Court of Appeals for the Armed Forces

Argued February 5, 2007

Decided March 21, 2007

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant:  Captain Scott T. Ayers (argued); Colonel John T.
Phelps II, Lieutenant Colonel Kirsten V. C. Brunson, Lieutenant
Colonel Steven C. Henricks, and Major Billy B. Ruhling II (on
brief).

For Appellee:  Captain Michael Friess (argued); Colonel John W.
Miller II, Lieutenant Colonel Michele B. Shields, and Captain
Tami L. Dillahunt (on brief).

Military Judges:  Robert F. Holland, Michael J. Hargis, and
Michael B. Neveu


**This opinion is subject to revision before final publication.**

United States v. Young, No. 06-0505/AR

Judge ERDMANN delivered the opinion of the court.

Sergeant First Class Cyrus Young was charged with attempting to distribute marijuana, conspiracy to distribute marijuana, possession of marijuana with the intent to distribute, and distribution of marijuana in violation of Articles 80, 81, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 881, 912a (2000). Young entered pleas of not guilty but was convicted of all charges by members at a general court-martial. He was sentenced to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence and the United States Army Court of Criminal Appeals summarily affirmed the findings and sentence. United States v. Young, Army 20010820 (A. Ct. Crim. App. 2006). We granted review of three issues: whether the evidence was legally sufficient; whether two offenses stood as greater and lesser included offenses; and whether Young had been denied his due process right to speedy post-trial review and appeal. We affirm the decision of the Army Court of Criminal Appeals.

## Background

The offenses underlying this appeal occurred at the home of Young's cousin, Frederick Young. In January 2001 Frederick invited an individual named Paul Chapman to come over to his

2

house, which is located in Laurel, Mississippi.  When Chapman arrived, Frederick introduced him to Young.  Young showed Chapman a bag with a "block" of marijuana in it and asked if Chapman was interested in some.

At about the same time, because of a "911" call indicating a possible domestic disturbance and some confusion over the address from which the call originated, police officers showed up at Frederick's home believing that a domestic disturbance was in progress.  Officer Jerome Jackson knocked on the door and explained to Frederick that he was responding to a 911 call. Jackson explained that he needed to enter the residence to check on the occupants' welfare and Frederick permitted Jackson to enter.  As they entered, Frederick loudly announced that he was alone and no one had called the police.  Chapman, who was in a bedroom with Young, testified that at this point Young appeared nervous and gathered something that he "had on the floor in a bag" as if "[h]e was trying to hide something."  Chapman then testified that he observed Young pick up a black bag and toss it across the room into the closet.

When Jackson entered a hallway in the house he noticed that the door to a rear bedroom was slightly open.  Jackson saw an individual behind the door and saw the door quickly close. Jackson knocked on the door, identified himself and asked the occupant to open the door.  After he heard a lot of commotion,

3

Jackson opened the door and entered. Upon entering, Jackson observed a light-colored bag being thrown across the room from his left, where Young was located, to his right. The bag landed on a couch. Jackson testified that Young and Chapman appeared nervous.

After Young and Chapman were removed from the bedroom, Jackson examined the bag that he had seen land on the couch. Jackson described the bag as one plastic bag inside of another plastic bag. The bags contained a "compressed . . . rectangular . . . green-leafy substance" that Jackson believed was marijuana. At that point, Jackson contacted the Narcotics Division and Sergeant Malcolm L. Bounds responded to the house.

Bounds testified that in the bedroom he found a white grocery bag on the couch which held a plastic ziplock bag containing marijuana. The white grocery bag was on top of a black duffle bag with red writing on the side. This black duffle bag contained a "Crown Royal" cloth bag which in turn contained five rolls of money, each roll containing $1,100.00, and a bank receipt from Young's account at the Fort Hood National Bank. Young would later testify that the Crown Royal bag and bank receipt were his, although he denied owning the black bag in which they were found. Next to the black duffle bag on the couch, Bounds saw approximately twelve plastic bags. Although empty, some of the bags retained an impression as

though they had contained a square-shaped object similar to the shape of a brick of compressed marijuana. These empty plastic bags contained marijuana residue. Bounds also found a set of "Sunbeam panel scales" on the floor of the bedroom.

Bounds testified that he found another small set of scales in the doorway of the bedroom closet. Inside the closet Bounds found another black duffle bag. Bounds described this duffel bag as having been "thrown" into the closet because "[t]here was also a lot of paint and trash in there and that was the only thing that was clean in there." Bounds found six bricks of marijuana in the black duffle bag and a seventh brick underneath the duffel bag in the closet.

The total weight of all marijuana seized was about eighteen pounds. A search of Young netted $1,179.00 in cash from a small pouch around his waist. Testimony revealed that a pound of marijuana was worth between $900.00 and $1,100.00 in that region of Mississippi. Bounds stated on cross-examination that the circumstances at Frederick's house were indicative of a drug trafficker in the process of breaking down marijuana for distribution. Later, a drug detection dog alerted on Young's vehicle, but no marijuana was found in the vehicle. Young testified that although he was at Frederick's home, he did not own or possess any marijuana and the money found on him was to buy a car, tires, and gas.

## Discussion

### I. Legal Sufficiency

Young claims that the evidence is legally insufficient to show that he distributed any marijuana because there was no evidence connecting him to any marijuana, to the empty plastic bags containing marijuana residue, or to ownership of any marijuana. Because of the lack of evidence and uncertainty over who owned the marijuana, Young claims that the findings cannot be sustained. The Government responds that overwhelming circumstantial evidence demonstrated beyond a reasonable doubt that Young distributed marijuana.

In reviewing a case for legal sufficiency, this court must determine "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." United States v. Dobson, 63 M.J. 1, 21 (C.A.A.F. 2006) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)); United States v. Turner, 25 M.J. 324, 324-25 (C.M.A. 1987). In order to convict an accused for distribution of marijuana, the prosecution must prove: "(a) That the accused distributed a certain amount of a controlled substance; and (b) That the distribution by the accused was wrongful." Manual for Courts-Martial, United States pt. IV, para. 37.b.(3) (2005 ed.) (MCM). We are "'bound to draw every reasonable inference from the evidence of record in favor

of the prosecution.'"  United States v. McGinty, 38 M.J. 131, 132 (C.M.A. 1993) (quoting United States v. Blocker, 32 M.J. 281, 284 (C.M.A. 1991)).  We review a question of legal sufficiency de novo as a question of law.  United States v. Hays, 62 M.J. 158, 162 (C.A.A.F. 2005).

There is evidence in the record indicating, or giving rise to an inference of, Young's dominion or control over the marijuana and drug related materials found in the bedroom of Frederick's home:

1.  Young had possession of a brick of marijuana which he displayed to Chapman;

2.  Young gathered items in the bedroom when he knew that police were in Frederick's house and he threw a black duffel bag that yielded marijuana into the closet; and

3.  Young tossed a light-colored bag across the room when Officer Jackson opened the door and that bag contained marijuana.

Viewed in the light most favorable to the prosecution, this evidence establishes Young's constructive possession of the marijuana and a reasonable factfinder could indeed find beyond a reasonable doubt that Young had a direct criminal relationship with, if not ownership of, the marijuana.  From this point, additional evidence supports the finding that Young distributed marijuana:

7

1.  Near the black duffel bag found on the couch, which contained Young's Crown Royal bag and his deposit slip, were several empty plastic bags that retained the shape of a brick of marijuana;

2.  These empty plastic bags contained marijuana residue;

3.  Young's Crown Royal bag contained five rolls of money, each in the identical amount of $1,100.00;

4.  The price for marijuana in that region of Mississippi was between $900.00 and $1,100.00 a pound; and

5.  Two separate sets of scales, an item that can be reasonably associated with drug distribution, were found in the bedroom.

Reviewing this evidence for legal sufficiency and making the inferences in favor of the prosecution, we conclude that the evidence of distribution is legally sufficient. The record supports a conclusion that Young exercised dominion or control over the drugs and drug-related materials found in the bedroom of Frederick's home. Further, it is entirely reasonable to conclude, based on the empty plastic bags, the marijuana residue in those bags, and the rolls of money in Young's cloth Crown Royal bag, that Young had completed a sale of marijuana before the police arrived.

II.  Greater and Lesser Included Offenses

Young argues that his separate convictions for distributing marijuana and possession of marijuana with the intent to distribute cannot stand.  He claims that the marijuana distributed was a portion of the marijuana charged within the specification alleging possession of marijuana with the intent to distribute.  Asserting that there is no evidence to support a finding that these were separate and distinct quantities of marijuana, Young argues that the lesser included offense of possession of marijuana with the intent to distribute should be dismissed.  The Government responds that Young was convicted of distributing and possessing two distinct quantities of marijuana and the two offenses do not stand as greater and lesser included offenses.

In United States v. Savage, 50 M.J. 244, 245 (C.A.A.F. 1999), this court addressed charges alleging distribution and possession with intent to distribute the same marijuana on the same day.  Under those circumstances, we determined that the offenses stood as greater and lesser included offenses and that "Congress did not intend to punish a servicemember twice for essentially the same act."  Id.; see also United States v. Brown, 19 M.J. 63, 64 (C.M.A. 1984).  However, where the facts demonstrate that the acts or quantities of contraband are distinct, separate convictions for both distribution and

possession may be upheld.  Thus, in United States v. Heryford, 52 M.J. 265, 267 (C.A.A.F. 2000), we upheld separate convictions for distribution of LSD and possession of that same LSD where the facts demonstrated that the accused had retained the LSD in his off-base apartment for two days prior to entering a military installation and distributing the substance.  Similarly, an accused may be separately convicted and punished for distributing a portion of a quantity of drugs and for possessing that portion he retains.  See United States v. Morrison, 18 M.J. 108, 108 (C.M.A. 1984) (summary disposition).

The evidence in this case supports the conclusion that Young was convicted of distributing one quantity of marijuana and thereafter retaining (possessing) a distinct remaining quantity.  We have found legally sufficient evidence to support the finding of distribution of some amount of marijuana, in part, based upon the empty plastic bags, marijuana residue in those bags, and the large quantity of cash found in Young's Crown Royal bag.  This same evidence supports an inference that Young had completed a marijuana transaction before law enforcement entered the premises and discovered the remaining eighteen pounds of marijuana.  The identity of the person to whom marijuana was distributed is not an essential element of proof of the offense.  See MCM pt. IV, para. 37.b.(3).

The approximately eighteen pounds of marijuana found in the bedroom is the amount that Young was convicted of possessing with the intent to distribute.  We conclude that the evidence supports a factfinder's conclusion that the marijuana Young was charged with possessing was not the same marijuana that he was charged with distributing.  Consequently, the offenses do not stand as greater and lesser included offenses, and both findings of guilty may stand.

III.  Post-Trial and Appellate Delay

We granted review of a final issue in this case to examine whether Young was deprived of his right to due process by the 1,637 days that elapsed between his trial and completion of appellate review.  Our methodology for reviewing issues of post-trial and appellate delay is set out in United States v. Moreno, 63 M.J. 129 (C.A.A.F. 2006).  We ask first whether the particular delay is facially unreasonable.  Id. at 136.  If we conclude that the delay is facially unreasonable, we then examine the four factors set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972):  (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice.  See Moreno, 63 M.J. at 135-36; United States v. Jones, 61 M.J. 80, 83 (C.A.A.F. 2005); Toohey v. United States, 60 M.J. 100, 102 (C.A.A.F. 2004).

United States v. Young, No. 06-0505/AR

If this analysis leads to the conclusion that an appellant has been denied the due process right to speedy post-trial review and appeal, "we grant relief unless this court is convinced beyond a reasonable doubt that the constitutional error is harmless." United States v. Toohey, 63 M.J. 353, 363 (C.A.A.F. 2006). Issues of due process and whether constitutional error is harmless beyond a reasonable doubt are reviewed de novo. United States v. Allison, 63 M.J. 365, 370 (C.A.A.F. 2006).

In this case, the delay of 1,637 days (four years, five months, and twenty-five days) between the trial and completion of review at the Court of Criminal Appeals is facially unreasonable. Nonetheless, we need not engage in a separate analysis of each factor where we can assume error and proceed directly to the conclusion that any error was harmless beyond a reasonable doubt. See id. at 370. This approach is appropriate in Young's case.

Having considered the totality of the circumstances and entire record, as well as the fact that we have found no merit in Young's other issues on appeal, we conclude that any denial of his right to speedy post-trial review and appeal was harmless beyond a reasonable doubt and no relief is warranted.

12

## Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.