# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant DUSTIN R. RIEBER
### United States Air Force

## ACM 38226

## 22 May 2014

Sentence adjudged 8 August 2012 by GCM convened at Yokota Air Base, Japan.  Military Judge:  W. Shane Cohen.

Approved Sentence:  Bad-conduct discharge, confinement for 90 days, and reduction to E-3.

Appellate Counsel for the Appellant:  Major Daniel E. Schoeni.

Appellate Counsel for the United States:  Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Rhea A. Lagano; Major Brian C. Mason; and Gerald R. Bruce, Esquire.

Before

HARNEY, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

MITCHELL, Judge:

The appellant was tried by a general court-martial composed of officer members. Contrary to his pleas, the appellant was found guilty of knowing and wrongful possession of one or more visual depictions of a minor engaged in sexually explicit conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934.  The members sentenced the appellant to a bad-conduct discharge, confinement for 90 days, and reduction to E-3.  The convening authority approved the sentence as adjudged.

The appellant raises seven issues for our consideration: (1) whether the evidence is factually and legally sufficient; (2) whether it was plain error for the military judge not to provide an instruction that possession must be "knowing and conscious"; (3) whether the curative instruction that was given overcame the unconstitutional burden shift in trial counsel's closing argument; (4) whether the curative instructions overcame error caused by trial counsel's argument of facts not in evidence during closing argument; (5) whether the military judge erred in instructing that to be guilty of possession of child pornography the images must be of a child under 18 years of age when the defense requested an instruction that the correct age under the Uniform Code of Military Justice is 16 years of age; (6) whether the military judge erred in denying a challenge for cause against a member; and (7) whether the cumulative error in this case merits relief.

We determine that the evidence regarding the three videos allegedly possessed by the appellant is factually insufficient to support his conviction. Of the remaining 198 images offered into evidence, we find that 186 of the images do not meet the legal definition of child pornography. We apply the standard described in *United States v. Piolunek*, 72 M.J. 830 (A.F. Ct. Crim. App. 2013) and set aside the findings and sentence.[1]

*Background*

Air Force Office of Special Investigations Special Agent (SA) KA used a web-based tool to discover that an IP address assigned to a location on Yokota Air Base, Japan had file names indicative of child pornography. Based on this information, a search authorization was obtained, and SA KA seized electronic devices from the appellant's dorm room. The devices included two laptops, a hard drive, a "couple of cell phones," and a variety of other electronic devices. All the items were sent to the Defense Computer Forensics Laboratory (DCFL) for analysis.

At trial, Mr. FK, from DCFL, testified for the Government as a computer forensics expert. He completed the second examination of the media sent to DCFL.[2] He examined the 27 files identified by SA KA, along with reviewing all the media submitted to DCFL. Of the 27 files SA KA identified, Mr. FK determined that all of them were obtained through using either FrostWire or LimeWire.

---

[1] Because we set aside the findings and sentence on this basis, the other issues are moot and we do not address them.
[2] The first Defense Computer Forensics Laboratory analyst concluded that "there was no evidence found indicating the [appellant] was intentionally searching for CP (child pornography) websites or files." Special Agent KA asked for a second analysis after receiving this report. When trial counsel sought to admit the second analysis, which included portions of the first report, trial defense counsel sought to have the initial conclusion that there was no evidence of the appellant intentionally searching for CP included in the report. Trial counsel objected to its inclusion based on hearsay, and the military judge sustained the objection.

Both FrostWire and LimeWire are peer-to-peer file sharing applications. Once a user selects a file to download, the file is placed in a temporary directory or incomplete folder with a "T" prefix designation until the download is complete. Once the download is complete, the "T" is removed and the file is moved out of the incomplete folder into another location, in this case into a folder designated "LimeWire saved." The saved folder is by default shared with other LimeWire users. The appellant also had a "Limewire1" folder on one of the laptops, which contained files he moved from the "LimeWire saved" folder. This "Limewire1" folder was also copied onto the external hard drive.

At trial, the Government admitted into evidence a screenshot of the "Limewire1" folder, exhibiting thumbnail images of all of the photos in this folder, along with their file names. This exhibit was admitted without any limitation or objection. On cross-examination, Mr. FK agreed that of the roughly 200 images captured in this exhibit, more than 180 of them were of adults. One of the images that had been identified as suspected child pornography had been opened, but there was no evidence that any of the other suspected child pornography images were ever viewed. However, the first forensic report from DCFL stated, "No link files were found that point to any agent-selected files or files that appear to be [child pornography] related."

Trial counsel also admitted three videos into evidence. The videos of suspected child pornography were all contained in the incomplete folder on the appellant's laptop computer. The videos of suspected child pornography were not complete and were not found anywhere else on the appellant's computer media. A "jump-list" indicated the appellant had previewed or attempted to view the files as they were being downloaded. The court members viewed no more than 60 seconds of each of the videos. The Government's expert testified that the reason the videos most likely were contained in the incomplete folder was that the appellant intentionally cancelled the downloads as they were occurring. The incomplete folder also contained 15 other movie files that did not involve suspected child pornography.

Investigators found no search terms in the peer-to-peer programs or in the internet history indicative of searches for child pornography. The appellant had conducted an internet search for "lolicon," which is a Japanese style of animation that depicts underage characters who are often in sexual situations; however, investigators found no lolicon images on the appellant's computer media. Mr. FK described the appellant as having a "significant amount" of adult pornography.

Trial defense counsel also called a computer forensics expert, Mr. KP of Global CompuSearch. Mr. KP also testified that "the only reasonable conclusion" as for why the three videos at issue were in the temporary folder was that the appellant intentionally cancelled the download. The "LimeWire1" folder was created by the user and contained 197 photos, including all of the images SA KA had identified as suspected child

pornography. Mr. KP described the folder contents as "obviously fully developed women mostly; many of them celebrity look-alike type of images." Mr. KP explained that some of the adult pornography images from this folder were in a thumbnail folder, indicating they had been previously viewed by the computer's user. However, none of the suspected child pornography images were in a thumbnail folder, which indicated that the images SA KA had identified as suspected child pornography had not been viewed by the user. Mr. KP found link files in allocated space (indicating the files were physically opened by the user) to regular movie files, TV shows, and to a significant amount of adult pornography, but not to any of the suspected child pornography videos. He found one link file in the unallocated space to one of the alleged child pornography pictures; however, because of the limited information in this link file, he concluded that "there's no forensic evidence that supports that the images or movies in question today were viewed by [the appellant]." He also found the appellant had "an extremely large collection of adult pornography" and a terabyte of theatrical movies and television shows. Mr. KP was able to recover and review "thousands upon thousands" of internet hits and searches by the appellant and did not find any search terms related to child pornography.

The appellant testified that he used the peer-to-peer programs to search for music, movies, and adult pornography. When he searched for pornography he used search terms such as "Latino, sex, anal, Asian, [and] bukkake."[3] On cross-examination, he admitted he may have also used "teen" as a search term; however, he was searching for 18-year-olds or 19-year-olds. He explained that many legal pornography websites contain the word "teen." He stated that he did not pay attention to the file names of material found on peer-to-peer sharing applications, as he found they did not reliably indicate the files' content. He also said the reason he moved files from the "LimeWire saved" folder to a personal folder was so his files would not be shared with other LimeWire users. He admitted he would preview movies as they downloaded to verify they were what he was seeking. On a few occasions, he stated he saw movies that concerned him, so he cancelled the download. He was not aware the remnants of the cancelled movie were still on his computer. He also testified he had not viewed all the photos on his computer and was not aware any were of child pornography.

During closing argument, trial counsel used the prosecution exhibit which showed all 197 images from the "LimeWire1" folder. Although trial counsel focused on a few of the images in the beginning of his argument, this was the only exhibit he used, and this exhibit was also the primary focus of the majority of his argument. Trial counsel argued:

> He put these files on his computer. Those filenames sat there downloaded
> but it's way more than what the filenames in this case clearly indicate
> because they are all right. They all tell you exactly what's in those files.

---

[3] Although not defined at trial, "bukkake" is defined as "a sexual practice that involves a group of men ejaculating on one person, usually a woman." Dictionary.com Unabridged. Random House, Inc., http://dictionary.reference.com/browse/bukkake (last visited May 16, 2014).

It's the fact that the photos in this case were located in that file. That they were moved; other files deleted, and they were backed up . . . What I would like to do at this time is step back and take a look at all the evidence that you have before you, to understand how, not only you know that child pornography ended on the two computers and hard drives of the Accused, but that he knew he possessed it. He knew that it sat there. Now, it's important to note that you need to find merely one of those images, merely one of those instances that he acknowledged of them.

When instructing the members on the elements of the offense, the military judge used terms and definitions that mirrored much of the language in the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. §§ 2252A-2260 (2006). He defined "sexually explicit conduct" consistent with the definition of that phrase in the CPPA. The military judge instructed the members that a required element was the knowing possession of "one or more visual depictions of minors engaging in sexually explicit conduct." The military judge further defined "sexually explicit conduct" to include "lascivious exhibition of the genitals or pubic area of any person." The military judge had previously ruled against the defense on a motion that the age of a "minor" under the UCMJ was 16 years old. He determined that the Government had adopted 18 U.S.C. § 2252 or § 2252a as the basis for the offense. He referenced *United States v. Beaty*, 70 M.J. 39 (C.A.A.F. 2011) and *United States v. Roderick*, 62 M.J. 425 (C.A.A.F. 2006) for support of using the definitions from the CPPA. The only modification the military judge made to the definitions from the CPPA was to insert the word "actual person" because of the requirement that "such depictions must involve actual minors." *Beaty*, 70 M.J. at 43. The military judge properly instructed the members; therefore, we use the military judge's definitions when determining legal and factual sufficiency.

*Legal and Factual Sufficiency*

To support a conviction of the charge and specification at trial, the Government presented Prosecution Exhibit 1, containing 16 images[4]; Prosecution Exhibit 3, containing 198 thumbnail-sized images[5]; and Prosecution Exhibit 4, containing three sexually explicit videos. The members returned with a general verdict that the appellant was guilty of wrongfully and knowingly possessing one or more images of minors engaged in sexually explicit conduct. There is a presumption in favor of general verdicts, and they will not ordinarily be set aside even if there are alternate or multiple theories of

---

[4] In counting 16 images in this exhibit, we do not include images duplicated within the exhibit or still-frame images of videos contained within Prosecution Exhibit 4. Additionally, these 16 images are duplicates of images found in Prosecution Exhibit 3, only submitted in a larger format. Therefore, we do not count these 16 images as separate images.

[5] We note the record of trial consistently refers to 197 images in this exhibit, however, in our review, we count 198 thumbnail-sized images. We use 197 when summarizing witness testimony to be consistent with their in-court testimony. We use 198 for our legal review.

guilt.  *See United States v. Rodriguez*, 66 M.J. 201 (C.A.A.F. 2008); *Griffin v. United States*, 502 U.S. 46 (1991).  However, "[w]here a general verdict of guilt is based in part on conduct that is constitutionally protected, the Due Process Clause requires that the conviction be set aside."  *United States v. Barberi*, 71 M.J. 127, 128 (C.A.A.F. 2012) (citing *Stromberg v. California*, 283 U.S. 359, 368-70 (1931)).

Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only those findings of guilty we determine to be correct in both law and fact.  We review issues of legal and factual sufficiency de novo.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."  *United States v. Turner*, 25 M.J. 324-25 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Moreover, "[i]n resolving legal-sufficiency questions, [we are] bound to draw every reasonable inference from the evidence of record in favor of the prosecution."  *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991).  *See also United States v. Young*, 64 M.J. 404, 407 (C.A.A.F. 2007).  The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt."  *Turner*, 25 M.J. at 325.  Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination.  Article 66(c), UCMJ; *United States v. Bethea*, 46 C.M.R. 223, 224-25 (C.M.A. 1973).

Looking first at the videos contained in Prosecution Exhibit 4, having examined the entire record, and making allowance for not having personally observed the witnesses, we find the evidence regarding the knowing possession of the three videos to be factually insufficient.  We are not convinced beyond a reasonable doubt of the appellant's guilt as to the *knowing* possession of the three video snippets.  The forensic evidence in the case was that the appellant affirmatively stopped the download of the videos after he viewed them while they were downloading.  By default the program he used stored these disrupted files in a temporary file.  We are not convinced there is evidence the appellant ever viewed these images after he stopped the download.  The appellant took reasonable steps to prevent his possession of these images.  We do not find the circumstantial evidence in this case sufficient to convince us beyond a reasonable doubt that the appellant knowingly possessed these partial downloads.  Because we determine the knowing possession of these video files was not proven beyond a reasonable doubt, we do not conduct any further analysis on them.

Next, we determine if any of the 198 images from Prosecution Exhibits 1 and 3 failed to satisfy the requirement that they be visual depictions of minors engaging in "sexually explicit conduct," and are, thus, constitutionally protected.  To determine whether the images were visual depictions of minors engaging in "sexually explicit

conduct," we must conduct a review of the legal and factual sufficiency of the evidence. Even if the images are of a minor, the images are not prohibited unless they depict "sexually explicit conduct." This includes actual or simulated sexual intercourse, masturbation, sadistic or masochistic abuse or a "lascivious exhibition of the genitals or pubic area." For most of the images, the review turns on this last factor. "If the images do not depict the genital or pubic area, we stop our analysis." *United States v. Piolunek*, 72 M.J. at 836, *review granted in part,* 14-0283/AF, 2014 WL 1759583 (C.A.A.F. 1 April 2014). If those specific areas are depicted, we apply the test set out in *United States v. Dost*, 636 F.Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987). This Court adopted the widely-accepted *Dost* factors in *United States v. Pullen*, 41 M.J. 886 (A.F. Ct. Crim. App. 1995).

We first examine the 198 images submitted by the Government as Prosecution Exhibit 3 from the "LimeWire1" folder. The question we must address is whether, as a matter of law, the images in this case are of minors engaged in sexually explicit conduct. Many of the images have filenames with terms such as "jailbait,"[6] "preteen," "lolita," and other terms indicative of children under 18 years of age. However, as the experts testified, the file names are not necessarily indicative of the file contents.[7] The images are approximately 1/2 by 3/16 inches. The very small size of the images makes a determination of the age of the subjects nearly impossible. However, 16 images from Prosecution Exhibit 3 are displayed in a larger format in Prosecution Exhibit 1.

We now focus our analysis on the 16 images admitted into evidence as Prosecution Exhibit 1 as part of the DCFL report. Of the 16 images, we find four of the images are not factually sufficient to establish that they are minors engaged in sexually explicit conduct.[8] Applying the *Dost* factors, we find each of the remaining 12 images depicts an exhibition of a minor's genitalia or pubic area that was "lascivious" based on a totality of the circumstances. *Roderick*, 62 M.J. at 429-30 (citations omitted). We find these 12 images to be legally and factually sufficient to support a conviction for the possession of one or more visual depictions of a minor engaging in sexually explicit conduct. Because Prosecution 1 is a subset of Prosecution Exhibit 3, we were able to determine that 12 of the 198 images in Prosecution Exhibit 3 are legally and factually sufficient. Nevertheless, we find that 186 of the 198 images in Prosecution Exhibit 3

---

[6] A slang term defined as "a young woman, or young women collectively, considered sexually attractive but below the age of consent." Dictionary.com. Collins English Dictionary - Complete & Unabridged 10th Edition, http://dictionary.reference.com/browse/jailbait (last visited May 16, 2014).

[7] For example, "Jailbait 03" depicts three adult women standing in a room with their arms around each other's shoulders. The photo shows the women from the waist up. They are wearing tank tops. The photo does not depict any sexually explicit conduct.

[8] The images identified in the report as exhibits 7, 13, and 14 are not factually sufficient to establish the subjects are minors. The image identified in the report as exhibit 12, although depicting a nude minor, does not meet the definition of "sexually explicit conduct." The minor is not engaged in any sexual activity and her genitalia and pubic area are not visible.

were constitutionally protected as they do not depict minors engaging in sexually explicit conduct.

*Barberi and Harmlessness*

The Government did not distinguish which of the images submitted formed the basis for the charge and specification. While one may assume that the 16 images contained within the DCFL report formed the basis for the charge and specification, the charge sheet itself contains no such limitation and no bill of particulars was submitted to narrow the charged misconduct. Trial counsel utilized Prosecution Exhibit 3 containing all 198 images from the "LimeWire1 folder" and argued that the members could convict the appellant if they found he knowingly and wrongfully possessed just one image from this exhibit. This exhibit was offered into evidence without any limitation on how the members were to consider it. Because trial counsel invited the members to consider all the images in making their determination, we also consider all the images admitted for this determination. *See United States v. Huey*, ACM 38139 (A.F. Ct. Crim. App. 4 December 2013) (unpub. op.) (considering Government's introduction of 112 images/videos without any explanation as direct evidence of child pornography possession charge). We therefore find all 198 images in Prosecution Exhibits 1 and 3 were before the members as a possible basis for the appellant's conviction.

Because we have found 186 of the total 198 images that served as the possible basis for the appellant's conviction do not meet the legal requirements to be visual depictions of a minor engaging in sexually explicit conduct and are, therefore, constitutionally protected, we must now determine whether our superior court's decision in *Barberi* requires that we set aside the finding of guilt.

In *Barberi*, the Court of Appeals for the Armed Forces held, "'[I]f a factfinder is presented with alternative theories of guilt and one or more of those theories is later found to be unconstitutional, any resulting conviction must be set aside when it is unclear which theory the factfinder relied on in reaching a decision.'" 71 M.J. at 131 (quoting *United States v. Cendejas*, 62 M.J. 334, 339 (C.A.A.F. 2006) (citing *Stromberg*, 283 U.S. at 368)) (alteration in original). The Court further noted, "The theory enunciated by the Supreme Court in *Stromberg*, 'encompasses a situation in which the general verdict on a single-count indictment or information rested on *both* a constitutional and an unconstitutional ground.'" *Barberi*, 71 M.J. at 131 (quoting *Zant v. Stephens*, 462 U.S. 862 (1983)) (emphasis in original). The Court therefore set aside the conviction despite the fact that "two of the [six] images submitted by the prosecution in support of [the charge] were legally and factually sufficient to support a finding of guilty." *Barberi*, 71 M.J. at 131.

In *Piolunek*, we recognized that our superior court's holding in *Barberi* did not require the setting aside of a general verdict in every case involving images that were

constitutionally protected. To the contrary, we need not set aside a general verdict if this Court determines beyond a reasonable doubt that the error was harmless, *i.e.*, did not contribute to the verdict of guilty. *See Barberi*, 71 M.J. at 132; *Chapman v. California*, 386 U.S. 18, 21-24 (1967).

In *Piolunek*, we identified three factors to determine "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" 72 M.J. at 838 (citing *Chapman*, 386 U.S. at 23). These three factors are: "(1) The quantitative strength of the evidence; (2) The qualitative nature of the evidence; and (3) The circumstances surrounding the offense as they relate to the elements of the offense charged." *Id.* Based upon an examination of these factors, we cannot conclude beyond a reasonable doubt that the 186 images were unimportant in relation to everything else the members considered, and thus the error of admitting the 186 constitutionally protected images was not harmless beyond a reasonable doubt.

First, examining the quantitative strength of the evidence, only 12 of 198 images, or 6%, are prohibited images. The minimal quantitative strength weighs heavily in the appellant's favor. The qualitative nature of the evidence weighs in favor of the Government. The 12 images depict children who are clearly engaged in sexually explicit conduct. The surrounding circumstances weigh in favor of the appellant. As described above, the circumstantial evidence supporting the knowing possession of these images is not overwhelming. Thus we conclude that the error in submitting these 186 images is not harmless beyond a reasonable doubt.

*Conclusion*

The finding of guilty and the sentence are set aside, and we order the charge and specification to be dismissed. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court