**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman First Class ANTHONY L.W. PEACOCK**
**United States Air Force**

**ACM 38043 (rem)**

**25 August 2015**

Sentence adjudged 27 August 2011 by GCM convened at Royal Air Force Mildenhall, United Kingdom. Military Judge: Jefferson B. Brown.

Approved sentence: Bad-conduct discharge and confinement for 2 months.

Appellate Counsel for the Appellant: Major Thomas A. Smith and Major Luke D. Wilson.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Jennifer A. Porter; Lieutenant Colonel C. Taylor Smith; Major Brian C. Mason; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL and MAYBERRY
Appellate Military Judges

UPON REMAND

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

PER CURIAM:

The appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his plea, the appellant was found guilty of one specification of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928.[1] The members sentenced the appellant to a bad-conduct discharge,

---

[1] The appellant was acquitted of two additional specifications of assault consummated by a battery under Article 128, UCMJ, 10 U.S.C. § 928; seven specifications involving sexual offenses under Article 120, UCMJ, 10 U.S.C. § 920; and one specification of sodomy under Article 125, UCMJ, 10 U.S.C. § 925.

confinement for 3 months, and reduction to E-1. The convening authority approved only so much of the sentence that called for a bad-conduct discharge and confinement for 2 months.

*Procedural History*

On 25 January 2013, The Judge Advocate General of the Air Force appointed a retired Air Force officer and former appellate military judge, who was currently employed as a civilian litigation attorney in the Department of the Air Force to the position of appellate military judge on the Air Force Court of Criminal Appeals based on Article 66(a), UCMJ, 10 U.S.C. § 866(a). On 25 June 2013, the Secretary of Defense, pursuant to his purported authority from 5 U.S.C. § 3101 *et seq.* appointed the same civilian employee to serve as appellate military judge on the Air Force Court of Criminal Appeals.

When the appellant's case was initially before us, the appellant argued (1) that the evidence is legally and factually insufficient to support his conviction for assault consummated by a battery, and (2) that his sentence is inappropriately severe.

On 26 April 2013, this court disagreed and issued a decision in which it affirmed the findings and sentence. *United States v. Peacock*, ACM 38043(A.F. Ct. Crim. App. 26 April 2013) (unpub. op.). The appointed civilian employee was a member of the panel that decided the case. Following the subsequent appointment by the Secretary of Defense on 25 June 2013, this court reconsidered its decision sua sponte and on 23 July 2013 issued a new opinion upon reconsideration in which it again affirmed the findings and sentence in the appellant's case. *United States v. Peacock*, ACM 38043 (recon) (A.F. Ct. Crim. App. 23 July 2013) (unpub. op.).

On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint civilian employees as appellate military judges and that the earlier appointment was "invalid and of no effect." On 11 March 2015, our superior court concluded the improper appointment of the civilian employee by the Secretary of Defense was not waived by an earlier failure to object. *United States v. Jones*, 74 M.J. 95 (C.A.A.F. 2015). Pursuant to *Janssen* and *Jones*, our superior court reversed our decision in this case and remanded it to us for a new review under Article 66, UCMJ, before a properly constituted panel. *United States v. Peacock*, 74 M.J. ___ No. 14-0033/AF (C.A.A.F. 2015) (Daily Journal 30 March 2015). In addition to reviewing the prior pleadings, we issued an order authorizing the appellant to file supplemental briefing.

In light of this ruling by our superior court, we have reviewed the appellant's case. Our review includes the appellant's previous filings and the previous opinions issued by

this court, as well as a supplemental assignment of error in which the appellant asserts he is entitled to relief due to excessive post-trial processing delays.[2] Finding no error, we affirm the findings and the sentence.

*Background*

The appellant and his wife, SP, were married in November 2010. Shortly after their marriage began, the appellant and SP started having marital problems. On 22 January 2011, while visiting the appellant's supervisor, MM, and his wife, the appellant and SP had an argument. The appellant left, and SP spent the night at MM's home.

The next day, on 23 January 2011, the appellant returned to MM's home, where the argument continued. They eventually went outside. According to SP, the appellant became "very aggressive." She remembered pointing her finger at him and telling him to "just stop." She testified that he then grabbed her arms and shoulder area and told her not to point her finger at him. SP said the appellant grabbed her as she tried to get away, turned her around, and punched her with a closed fist on the left side of her face. She testified that she continued to try to get away, but the appellant turned her around and slapped her on the right side of her face.[3] SP then "hit him in his nose" as she tried to get him off of her. SP stated that she got away and:

> [I] walk[ed] swiftly towards the gate to get inside to where people could see. I remember [the appellant] grabbing me around my neck [and] shoulder area with one arm and the other one around my waist. At first he tried to pull me back and I was trying to walk forward.

She further testified, "I remember I got to the gate door and then he started [to] forcibly walk with me and I was scared. I was scared that I was going to hit the glass sliding door. I was scared that was his intention. And at that time [MM] had come out."

MM testified that he was inside his house when the appellant and SP began arguing. Once he became aware of the argument, MM went outside, where he saw "[the appellant] with his hands up and his right arm was up by her right shoulder and the left arm was by the left side of her torso. With her jacket [he] could not see [the appellant's] actual hands whether they were on or grabbing or anything like that. [He] just saw the way [the appellant's] arms were up." MM also testified that the appellant was not "repeatedly shoving" but was moving SP "toward [the inside of] our yard. And she was

---

[2] This issue is raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

[3] The appellant was charged with unlawfully slapping SP on the face with his hand, and unlawfully punching her in the side of the head with his fist, both in violation of Article 128, UCMJ; he was found not guilty of these two specifications. We include the evidence regarding these offenses due to their relevance to our analysis of the affirmative defense of self-defense.

leaning back as if she was trying to walk in the opposite direction, but the way she was being moved you could tell it wasn't of her own accord."

MM took SP to the emergency room, where the treating physician noted that SP had some "tenderness on the back of her neck."

*Legal and Factual Sufficiency of the Evidence*

The appellant argues that Specification 2 of the Charge is legally and factually insufficient to support his conviction for assault consummated by a battery. We disagree.

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In resolving legal-sufficiency questions, "[we are] bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993) (quoting *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991)). *See also United States v. Young*, 64 M.J. 404, 407 (C.A.A.F. 2007). Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; *United States v. Bethea*, 46 C.M.R. 223, 224-25 (C.M.A. 1973).

We find the evidence legally and factually sufficient to support the appellant's conviction of assault consummated by a battery by unlawfully grabbing Ms. SP on the neck and torso with his hand, as set forth in Specification 2 of the Charge . The elements of that offense are (1) that the accused did bodily harm to a certain person, and (2) that the bodily harm was done with unlawful force or violence. *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 54.b.(2) (2012 ed.). "Bodily harm" is any offensive

touching of another, however slight. *MCM*, Part IV, ¶ 54.c.(1)(a). "Unlawful force or violence" is physical force used "without legal justification or excuse and without the lawful consent of the person affected." *Id*.

The evidence shows the appellant did bodily harm to SP with unlawful force or violence. He applied force to SP with no legal justification or excuse, and there is no evidence to show that SP consented to the offensive touching. SP testified that, after the appellant punched and slapped her, she hit him in the nose, got away from him and "walk[ed] swiftly towards the gate to get inside to where people could see." At that point, the appellant grabbed her around her "neck [and] shoulder area with one arm and the other one around [her] waist." The evidence also shows that the appellant "tried to pull [SP] back" as she was "trying to walk forward." At one point, the appellant started to "forcibly walk" SP such that she was scared she was going to hit the sliding glass door. MM corroborates SP's testimony to the extent that he witnessed the appellant "with his hands up and his right arm was up by [SP's] right shoulder and the left arm was by the left side of her torso." He also witnessed the appellant moving SP "toward [the inside of] our yard. And she was leaning back as if she was trying to walk in the opposite direction, but the way she was being moved you could tell it wasn't of her own accord."

We have two additional observations about the evidence. First, the military judge instructed the members on the concept of self-defense. Because of the conviction, we can surmise the members concluded that self-defense did not apply to this portion of the altercation and argument between the appellant and SP. We agree. The facts show that, after SP and the appellant punched and slapped each other, SP had disengaged and walked swiftly away from the appellant. Thus, when the appellant grabbed SP from behind, there is nothing in the record to suggest that she was about to inflict bodily harm on the appellant.

Second, the military judge also instructed the members about witness credibility, the character of the appellant, and the character of witnesses for peacefulness and untruthfulness. The record shows that the defense vigorously attacked the credibility of SP and MM. For example, the record shows that SP and MM were "romantically involved" at the time of the appellant's court-martial, and both had initially lied to authorities about the nature of their relationship. Additionally, the defense presented evidence that the appellant was a peaceful person and evidence that SP was neither a peaceful nor a truthful person. MM's wife also submitted an affidavit attesting that MM was not a truthful person. The members heard the testimony, personally observed the witnesses, and were properly instructed on how to evaluate witness credibility and believability. The evidence need not be free of all conflict for a rational fact finder to convict an appellant beyond a reasonable doubt. As may have occurred in this case, the members may believe "one part of a witness' testimony and disbelieve another." *United States v. Harris*, 8 M.J. 52, 59 (C.M.A. 1979). *See also United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986).

We have considered the evidence in the light most favorable to the prosecution and find the evidence legally sufficient to support the conviction. Having made allowances for not having personally observed the witnesses, we are ourselves convinced of his guilt beyond a reasonable doubt.

*Appellate Review Time Standards*

The appellant argues, citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006), that the unreasonable post-trial delay from the date the case was first docketed with this court in November 2011 until this opinion warrants relief. The appellant further cites to *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), noting this court's broad power and responsibility to affirm only those findings and sentence that should be approved.

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). When a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.

This case was originally docketed with this court on 15 November 2011 and our initial decision was issued on 26 April 2013, 17 months later.[4] This period of time did not violate *Moreno* standards. We then *sua sponte* reconsidered our decision and issued an opinion on 23 July 2013, more than 20 months after the initial docketing. The *Moreno* standards were developed to deter excessive systemic delays in post-trial and appellate processing. *Moreno*, at 142. We decline to adopt a time standard that would discourage reconsideration, either *sua sponte* or at the request of either party. When the initial decision is issued within the 18 month *Moreno* standard, but the subsequent decision on reconsideration is more than 18 months after docketing we will not presume an unreasonable delay; instead we will focus on the standards established in *Barker*. The first factor is a threshold one, the full due process analysis is not triggered unless the

---

[4] This case was docketed before this court on 11 November 2011, 39 days after the convening authority's action of 7 October 2011. This 39-day delay is presumptively unreasonable. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Although the appellant has not sought relief for this period of delay, we have conducted an analysis of the four *Barker* factors. Upon our review of the factors, we conclude the delay was harmless under the *Barker* analysis.

delay is facially unreasonable. *Toohey*, 60 M.J. at 102. We conclude that three months for reconsideration is not unreasonable and therefore we do not examine the remaining *Barker* factors.

We also examine the time subsequent to our July 2013 decision. The *Moreno* standards continue to apply as a case continues through the appellate process. *United States v. Mackie*, 72 M.J. 135, 136 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this court and our superior court is within the 18-month standard and there is no malicious delay. *Id.*; *United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). The time between our superior court's action to return the record of trial to our court for our action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *Mackie* at 136. The appellant argues that because neither of the previous decisions were issued by a properly constituted panel we should consider the time from initial docketing on 15 November 2011 until this opinion as uninterrupted for *Moreno* analysis. We reject the appellant's argument that, because the Secretary of Defense's appointment of the civilian employee was invalid and of no effect, the *Moreno* clock was not tolled by our earlier decisions.[5]

Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *Tardif*, 57 M.J. at 224; *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Gay*, 74 M.J. 736, (A.F. Ct. Crim. App. 2015), we identified a list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Those factors include how long the delay exceeded appellate review standards, the reasons for the delay, whether the government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or to the institution, if relief is consistent with the goals of both justice and good order and discipline, and can this court provide any meaningful relief. *Id.* No single factor is dispositive and we may consider other factors as appropriate. *Id.*

As we have in another case with similar appellate processing, we have determined that it is appropriate to consider the full length of time from initial docketing until our decision in reconsideration. *See, United States v. Bischoff*, 74 M.J. 664, (A.F. Ct. Crim. App. 2015). We find there was no bad faith or gross negligence in the post-trial processing. The appellant did not raise any issue of speedy appellate review until he filed his supplemental pleading on 4 May 2015. The reason for the delay after our initial decision was to allow this court and our superior court to fully consider a constitutional issue of first impression about whether the Secretary of Defense has the

_____

[5] Alternatively, if the standards set forth in *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006), are violated, we are convinced that the error is harmless beyond a reasonable doubt.

authority under the Appointments Clause[6] to appoint civilian employees to the service courts of criminal appeals. *See Janssen*, 73 M.J. at 221. While the answer may seem clear now with the advantage of subsequent decisions, we note that the appellant's initial petition to our superior court did not specify the appointment as an error. We find no evidence of harm to the integrity of the military justice system by allowing the full appellate review of this novel issue. Furthermore, the impact of any delay was mitigated when we specifically allowed the appellant to file a supplemental assignment of error. We have the authority to tailor an appropriate remedy without giving the appellant a windfall. *See Tardif*, 57 M.J. at 225. As to harm, the appellant complains that he continued to receive tax forms for 2012 and 2013 from the United States Air Force, imposing upon him tax liability for an income he did not receive. Although the putative wages were not large, the appellant complained that because of this oversight he was placed in a higher tax bracket and was unable to receive certain financial governmental assistance, such as the Earned Income Tax Credit. We also consider that the government initially failed to docket this case in a timely manner. We have expressly considered whether we should reduce some or all of the appellant's sentence. Based on our review of the entire record, we conclude that sentence relief under Article 66, UCMJ, is not warranted.[7]

*Sentence Severity*

This court reviews sentence appropriateness de novo. *United States v. Baier*, 60 M.J. 382, 383-84 (C.A.A.F. 2005). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007). We have a great deal of discretion in determining whether a particular sentence is appropriate but are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

We have given individualized consideration to this particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all other matters contained in the record of trial. In this case, the appellant assaulted his wife. Moreover,

---

[6] U.S. CONST. art. II, § 2, cl. 2.
[7] Our review is limited to relief under Article 66, UCMJ, 10 U.S.C. § 866. We expressly do not decide if the appellant has any valid pay related claim issues against the United States as this is not within our jurisdiction. *United States v. Dodge,* 60 M.J. 873, 878 (A.F. Ct. Crim. App. 2005). This decision does not foreclose the appellant from pursuing claims in the United States Claims Court. *Id.*; *Keys v. Cole*, 31 M.J. 228, 234 (C.M.A. 1990); *see, e.g., Combs v. United States*, 50 Fed. Cl. 592 (Fed. Cl. 2001).

the record shows that the appellant had received five letters of reprimand and counseling during his nearly three years of military service. Additionally, the convening authority considered the appellant's clemency submissions and reduced his sentence to confinement by one month and disapproved the reduction in rank. Under these circumstances, we find the approved sentence is appropriate.

## *Conclusion*

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court